UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.

KENNETH CHURCHILL,

        Defendant.

Case No. 17-cr-31-pp

---

**ORDER DENYING DEFENDANT'S LETTER MOTION TO DROP GUN ENHANCEMENT/GRANT EARLY RELEASE FROM CUSTODY (DKT. NO. 36)**

---

On July 13, 2017, the court sentenced the defendant. Dkt. No. 30. The facts in the PSR indicated that on the day of his arrest, agents went into the defendant's business, where they found him with the loaded handgun on his hip and a plastic baggie with thirty-five grams of heroin in his pocket (after the confidential informant had ordered that amount). In the section of the presentence investigation report that discussed sentencing guidelines calculations, the report indicated that "[o]n October 22, 2016, [the defendant] was in possession of a 9mm Ruger handgun that was holstered on his right hip, at a time when a heroin transaction was scheduled to occur. In addition, a total of six additional firearms and a box of assorted ammunition were recovered at the defendant's residence along with $17,333.00 in currency. Seven $100.00 bills were determined to have come from previous transactions with the undercover officer. Because a firearm was possessed, a two-level increase is recommended."

1

Section 2D1.1(b)(1) of the United States Sentencing Guidelines indicates that "[i]f a dangerous weapon (including a firearm) was possessed, increase by **2** levels." Application Note 11(a) to that guideline states that "[t]he enhancement for weapon possession in subsection (b)(1) reflects the increased danger of violence when drug traffickers possess weapons. The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the closet."

The defendant did not file any objections to the 2-level enhancement prior to the sentencing date. At the sentencing hearing, the court discussed the fact that the PSR recommended the enhancement—again, the defendant did not raise any objection at the time of sentencing.

Almost six months later, the defendant has written to the court, indicating that he is at the Duluth FPC, and that he has spoken with his drug counselor there. Dkt. No. 36. The defendant states that the counselor informed him that, although it is possible for inmates to earn a year off of their sentences by completing FPC Duluth's ten-month drug program, an inmate doesn't qualify for that one-year reduction if he received the 2-level gun possession enhancement under §2D1.1(b)(1). The defendant indicates that he doesn't know what a 2-level gun enhancement is, says that he was not charged with possessing a gun, and explains that he "did have a C.C.W. [concealed carry] permit to have a gun at [his] office for protection, and the gun was

registered to [him]." Id. He states that he did not carry drugs and guns around, and that he did not sell drugs to people in the community. He indicates that he obtained heroin for a sick friend, who set him up. He asks whether it is "possible to get the 2-point enhancement dropped," and if not, whether the court would give him an early release by twelve months or more on the forty-month (three year, four month) sentence it imposed if he completes the ten-month drug program at Duluth. Id.

It appears that the defendant is asking the court to revise, or reduce, his sentence. Fed. R. Crim. P. 35 allows a court to "correct" or reduce a sentence under only two circumstances. First, if the court imposed a sentence that resulted from "arithmetical, technical, or other clear error," the rule allows the court to correct that error "[w]ithin 14 days of sentencing." Second, the rule allows a court to reduce a defendant's sentence if, within a certain time period, the government files a motion indicating that the defendant provided substantial assistance to the government in investigating or prosecuting someone else. Neither of those situations are present here. The defendant is not arguing that the court imposed an incorrect sentence based on a math error, or a technical error. And the government has not filed a motion indicating that the defendant has provided substantial assistance.

If the defendant believed that the court should not have imposed the 2-level enhancement, he should have objected to that enhancement before sentencing, or at sentencing. Once a court has sentenced a defendant, the only ways to attack that sentence are to either file an appeal with a higher court, or

3

to file a motion under 28 U.S.C. §2255 to vacate, correct or set aside his sentence. The defendant should consult with his lawyer about whether either of these options is available to him under his circumstances.

The court does note that the relevant guideline, §2D1.1(b)(1), applies whenever a defendant possessed a firearm during a drug deal. It applies even if the defendant had a license to carry that gun, and even if the gun was registered to the defendant. The issue is not whether it was legal under the *gun laws* for the defendant to possess a gun, and as the defendant correctly notes, he was not charged with unlawfully possessing a gun. The issue is whether someone involved in "dealing" drugs—which means buying them, selling them, giving them to someone else—had a gun while they were conducting the deal. Under the facts the court had before it at sentencing, the enhancement was appropriate. Again, if the defendant believes that those facts were wrong, he should consult his lawyer about whether he has the ability to appeal or to file a §2255 motion.

The court strongly encourages the defendant to complete the ten-month drug program at Duluth, because it was clear from the PSR and the sentencing that the defendant's addiction problem contributed to his involvement in the offense, and was damaging his life. But the court does not have the authority to reduce the sentence it imposed—the sentence that it believed, as best it could determine, was appropriate—based on the defendant completing a drug program. The "one-year-off" policy is Duluth's policy, not this court's.

Finally, the defendant indicates that he wants the court to know that he wasn't going around selling drugs to people out in the general community. He sold drugs to the CI—a person whom he believed to be his friend, and whom he believed was sick. He says he was not selling drugs for a living. He indicates, "I just made a bad choice when I got my so-called friend the heroin which I knew was stupid." Dkt. No. 36. The court does not have any evidence one way or the other about whether the defendant was selling drugs to members of the public (and that's what courts must rely upon—evidence). But the court doesn't disagree that there are many, many good things about the defendant (reflected in the PSR, and discussed at sentencing). The court doesn't think the defendant is a bad man, or a bad person, or some sort of monster. The court based its sentence on the information and evidence provided, which indicated that on several occasions, the defendant sold heroin (more than user amounts) to someone who was working with the government. That is illegal (and the defendant acknowledges that it was). That is why the court imposed the sentence that it did.

The court encourages the defendant to discuss this order, and the information in it, with his lawyer. His lawyer is in the best position to give the defendant legal advice.

The court **DENIES** the plaintiff's letter motion to drop the 2-level gun

enhancement/reduce his sentence by a year or more. Dkt. No. 36.

Dated in Milwaukee, Wisconsin this 5th day of January, 2018.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**